IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIGSLIST, INC., a Delaware corporation, | Case No. 11-3545 SC |
| Plaintiffs, | ORDER DENYING MOTION FOR DEFAULT JUDGMENT |
| v. | |
| TERRENCE BRANLEY, a California resident, BRIAN LACK, a Nevada resident, and DOES 1 through 25, inclusive, | |
| Defendants. | |

## I.  INTRODUCTION

This case centers on allegations of copyright infringement and contractual breach.  Plaintiff craigslist, Inc. ("Plaintiff") operates the website www.craigslist.org ("website" or "craigslist"), an online service for posting and responding to classified ads.  Plaintiff asserts that Defendants Terrence Branley and Brian Lack (collectively, "Defendants") used craigslist to run an advertising scam by circumventing the website's security measures and posting thousands of fake advertisements for rental properties, in violation of craigslist's Terms of Use and various federal and state laws.

Now before the Court is a Motion for Default Judgment brought by Plaintiff against both Defendants.  ECF No. 35 ("Mot.").  Neither Defendant has appeared in this case, and the Clerk of the

Court has entered default against both of them. ECF Nos. 25 (Lack default), 29 (Branley default). Nevertheless, having carefully considered Plaintiff's papers, the Court DENIES the Motion for Default Judgment.

**II. BACKGROUND**

Because both Defendants have defaulted, the Court accepts the facts of the Complaint as true. Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). The craigslist website provides "free localized online classified ad services and discussion forums in hundreds of cities worldwide. More than 50 million Americans alone visit [craigslist] and post more than 40 million ads each month." Compl. ¶ 21. The craigslist website allows users to review or post online local classified advertisements for various categories of products and services. Id. ¶¶ 24-26. Plaintiff's Terms of Use ("TOU") govern its services and website. Id. ¶ 30. Users of craigslist must affirmatively accept the TOU to post ads or create an account. Id. ¶ 31. The TOU grant users a limited, revocable, nonexclusive license to access Plaintiff's website and services. Id. ¶ 32. The TOU prohibit, among other things: posting advertisements on behalf of others; accessing craigslist to facilitate posting advertisements on behalf of others; using a Posting Agent[1] to post advertisements; and using automated posting devices.[2] Id. ¶ 33.

---

[1] Plaintiff alleges that a Posting Agent is "a third-party agent, service, or intermediary that posts content to [craigslist] on behalf of others . . . ." Compl. ¶ 33.

[2] Plaintiff alleges that an "automated posting device" is "any automated device or computer program" that enables a user to post an advertisement on craigslist "without each posting being entered

2

The craigslist website is a work of authorship protected by copyright law. Id. ¶ 70. Plaintiff owns all right, title, and interest, including copyrights in the website, the posted classifieds, account registration, and account log-in expressions and compilations. Id. ¶ 71. The craigslist website displays copyright notices. Id. Plaintiff has registered copyrights in the website, including its post-to-classifieds, account registration and account log-in features. Id. ¶ 72.

Plaintiff employs a variety of technological measures to secure its intellectual property and protect the craigslist website against improper use. See generally id. ¶¶ 49-65. Two protective measures that are particularly relevant to the instant Motion are "phone-verified accounts" ("PVAs") and "CAPTCHAs." Plaintiff requires users to have a PVA to post advertisements in certain categories on craigslist. Id. ¶ 51. To create a PVA, a user must provide the craigslist website with a telephone number; craigslist sends a temporary passcode to the telephone number; the user then verifies receipt of the passcode by entering it on craigslist. Id. ¶ 52. This verification process is designed to regulate access to craigslist and thereby discourage improper posting. Id. ¶¶ 50-51.

Plaintiff also requires users to complete a "CAPTCHA" challenge before posting an advertisement on craigslist. Id. ¶ 54. CAPTCHA requires a user to decipher "partially obscured words or characters that humans can read but computer programs . . . usually cannot." Id. ¶ 55. CAPTCHA is supposed "to ensure that ads are posted manually (as required by the TOU) and not by automated means

---

manually." Compl. ¶ 33. These devices can be used "to submit postings in bulk." Id.

. . . ." Id. ¶ 56.

Plaintiffs allege that Defendants "have knowingly and willfully violated [the] TOU and various federal and state laws to engage in massive ad posting by automated means on [craigslist] . . . ." Id. ¶ 73. According to Plaintiff, Defendants "operate Posting Agent businesses whereby they post ads to [craigslist] on behalf of others in violation of [the] TOU." Id. ¶ 74.[3] Plaintiff alleges that Defendants use "CLAD Genius," an automated posting device, to create and post craigslist advertisements for others. Id. ¶ 75. CLAD Genius is equipped with features designed to electronically circumvent craigslist's CAPTCHA challenges and to automatically create PVAs. Id. ¶ 76. Plaintiff alleges that Branley uses CLAD Genius to post fabricated real estate advertisements on craigslist "by copying the titles of old ads in the craigslist housing section, deleting identifying information from the body of such ads, lowering the rental rate listed for the property, and then inserting photographs of other random properties taken from [other] real estate websites . . . ." Id. ¶¶ 78-79.

As for Lack, Plaintiff alleges that he operated the website www.autopvamaker.com, where he sold a software script called "Auto PVA Maker," used for automatically generating craigslist PVAs. Id. ¶ 80. Lack advertised this product as working "directly with CLAD Genius." Id. ¶ 81. Plaintiff alleges that it sent Lack a series of cease-and-desist letters, to which Lack responded first by changing the name of his website to conceal his continued misdeeds,

---

[3] The Complaint names BD Marketing, LLC ("BDM") as a Defendant, but Plaintiff voluntarily dismissed its claims against BDM without prejudice. ECF No. 30. Plaintiff alleges that "Defendant Branley is the President and Defendant Lack is the founder of [BDM]." Compl. ¶ 77.

4

and then shutting down the two websites Plaintiff alleges he ran. Id. ¶¶ 82-86. Plaintiff alleges that Lack nevertheless "continues to violate [Plaintiff's] TOU by operating as a Posting Agent." Id. ¶ 87.

Plaintiff alleges that Defendants affirmatively accepted Plaintiff's TOU at one or more times when accessing craigslist and posting advertisements, id. ¶ 91, but that notwithstanding their acceptance of the TOU they "accessed, and continue to access, [craigslist] without authorization or in excess of authorization," id. ¶ 88. On the basis of these and other allegations contained in the Complaint, Plaintiff asserts the following six claims: (1) violations of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 et seq.; (2) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (3) violations of California Penal Code § 502; (4) breach of contract; (5) fraud; and (6) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.

**III. LEGAL STANDARD**

After entry of a default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b)(2). Its decision whether to do so, while "discretionary," Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980), is guided by several factors. As a preliminary matter, the Court must "assess the adequacy of the service of process on the party against whom default judgment is requested." Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters, No. 00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). If the Court determines that service was sufficient, it

5

should consider whether the following factors support the entry of default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**IV. DISCUSSION**

    **A. Adequacy of Service on Branley**

Plaintiff claims that Branley was served by substitute service pursuant to California law. Mot. at 1; ECF No. 26 ("Branley POS") at 1. Federal Rule of Civil Procedure 4(e) permits service by any means authorized by the law of the state in which the district court sits. See Fed. R. Civ. P. 4(e)(1). California law permits substituted service, but only after a party makes reasonably diligent attempts at personal service. See Cal. Civ. Proc. Code § 415.20(b). Under California law, substituted service is effected by:

> leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the

6

> person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

Id.

Here, Plaintiff represents that on October 26, 2011, Branley was served by substitute service on his wife at an address in Huntington Beach, California, and that Plaintiff's process server then mailed a copy of the papers to the same Huntington Beach address. Branley POS at 2, 4. However, the Complaint alleges that Branley lives at a different address in Fountain Valley, California. Compl. ¶ 14. Nowhere in its papers does Plaintiff explain this discrepancy. Assuming without deciding that Plaintiff satisfied California's requirement of making reasonably diligent attempts to serve Branley personally before it left the papers with the person it identifies (without explanation) as Branley's wife, Plaintiff has not addressed to the Court's satisfaction the discrepancy between Branley's alleged Fountain Valley residence address and the Huntington Beach service address. Plaintiff, in short, has not established that the Huntington Beach address is the dwelling house or usual place of abode of Branley himself.

Because Plaintiff has not yet made the showing of adequate service that is required for entry of default judgment against Branley, the Court DENIES WITHOUT PREJUDICE Plaintiff's Motion for Default Judgment against him.

**B.  Adequacy of Service on Lack**

Federal Rule of Civil Procedure 4(e) provides that an individual may be served by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P.

7


4(e)(2)(A). Here, Plaintiff caused Lack to be personally served in San Francisco. ECF No. 21 ("Lack POS"). The Court determines that service on Lack was adequate and therefore proceeds to applying the Eitel factors.

### C. Application of Eitel Factors to Case Against Lack

Taken together, the second and third Eitel factors essentially require that "a plaintiff state a claim on which [it] may recover." Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (internal quotations omitted). Both requirements must be met: that is, Plaintiff must not only state a cognizable claim, but the claim must be one on which the Court can afford relief. Here, Plaintiff seeks three kinds of relief against Lack: a permanent injunction against further infringement of Plaintiff's copyrights and violations of the TOU; liquidated damages of $1,756,400 for Lack's alleged breaches of the TOU; and attorney fees and costs in excess of $50,000. Mot. at 16-17.

The Court DENIES WITHOUT PREJUDICE Plaintiff's request for attorney fees because, as explained below, the Court believes Plaintiff has not yet established that it is entitled to a default judgment granting the relief it seeks against Lack.

#### 1. Permanent Injunction Against Lack

The Court DENIES WITHOUT PREJUDICE Plaintiff's request for a permanent injunction against Lack because the Court finds that Plaintiff has not adequately alleged the likelihood of irreparable harm. Even in copyright cases, plaintiffs seeking injunctive relief must show that they are entitled to it pursuant to "traditional equitable considerations." See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 392-93 (2006). One of these

1 considerations is whether Plaintiff can establish "a likelihood of
2 irreparable harm." See Flexible Lifeline Sys., Inc. v. Precision
3 Lift, Inc., 654 F.3d 989, 998 (9th Cir. 2011). Plaintiff entirely
4 fails to engage this question, or any other part of the four-factor
5 test traditionally applied by courts of equity and whose continuing
6 vitality was affirmed in eBay.

7 Plaintiff's only allegation concerning Lack's possible future
8 misconduct is a single, conclusory statement that Lack "continues
9 to violate [the] TOU by operating as a Posting Agent." Compl. ¶
10 87. This is not enough to state a plausible claim for injunctive
11 relief because Plaintiff has not alleged facts sufficient to
12 support its conclusion that Lack "continues" to act as a Posting
13 Agent. And injunctive relief will not be granted solely on the
14 basis of allegations of past injury. See Mortensen v. Cnty. of
15 Sacramento, 368 F.3d 1082, 1086 (9th Cir. 2004).

16 The Court DENIES WITHOUT PREJUDICE Plaintiff's Motion for
17 Entry of Default Judgment against Lack with respect to the
18 requested permanent injunction.

19    2. Liquidated Damages Against Lack

20 In addition to a permanent injunction, Plaintiff seeks over
21 $1.7 million in liquidated damages from Lack. Plaintiff bases its
22 figure on facts contained in a declaration submitted by Plaintiff's
23 counsel ("Hennessy"). ECF No. 37 ("Hennessy Decl.") Hennessy
24 declares that after the Complaint was filed in this case, Branley
25 contacted him. Id. ¶ 3. Branley wanted to discuss his involvement
26 "in various craigslist-related businesses." Id. According to
27 Hennessy, Branley admitted to making thousands of fraudulent
28 postings on craigslist. Id.

Hennessy also declares that Branley implicated Lack in misuse of the craigslist website. The declaration states that Branley told Hennessy that Lack had posted a "diary detailing his experience operating a craigslist posting business on the 'Posting Punks' online forum," where Lack, according to Branley, "posted under the screen name 'Sticky Skunk.'" Id. ¶ 6. Hennessy attaches to his declaration a printout of part of the Posting Punks online forum. Id. Ex. C ("Printout"). The Printout shows a user explaining, under the handle "stickyskunk," how to misuse the craigslist website by serving as a Posting Agent for automobile salespeople, who then would pay the Posting Agent a cut of their increased automobile sales. The Printout contains a running log of stickyskunk's own efforts to make money at this unpromising enterprise.

Plaintiff takes Branley at his word that stickyskunk and Lack are one and the same. Plaintiff then uses stickyskunk's online journal entries to calculate how many times Lack breached the TOU. For example, in one post stickyskunk says: "For the week of 8/23-8/29: I have been posting between 500-700 ads per day in the Autos section, still riding that gravy train!" Printout at 8. From this statement, Plaintiff determines that stickyskunk has admitted to serving as a Posting Agent 600 times per day for 6 days, for a total of 3600 improper posts. Hennessy Decl. ¶ 8. Through similar processes of inference and estimation, Plaintiff calculates that stickyskunk made at least 8,782 posts as a Posting Agent. Id. Plaintiff then turns from these calculations to the TOU, which purport to provide Plaintiff with $200 in liquidated damages for each post made by a Posting Agent. See Mot. at 13. Plaintiff

10

multiplies the $200 liquidated damages figure by the 8,782 improper posts it attributes to stickyskunk/Lack, to determine that it is entitled to liquidated damages from Lack in the amount of $1,756,400. Id. at 14.

Even if the Court assumes for the sake of argument that Plaintiff's calculations represent reasonable assessments of prohibited conduct alleged in the Complaint,[4] and that the $200 liquidated damages figure is reasonable, all of Plaintiff's evidence concerning Lack's identity as stickyskunk, as well as stickyskunk's posting activities -- indeed, Hennessy's entire conversation with Branley -- is hearsay, or relies on hearsay for its relevance. The Court does not discern any applicable exceptions to the hearsay rule and Plaintiff, not having addressed the issue of hearsay, offers none. Mindful of Eitel's fourth factor, the sum of money at stake in the action, the Court is not inclined to award Plaintiff $1.7 million in damages on the basis of hearsay alone.

On balance, the other Eitel factors also weigh in favor of denying Plaintiff's motion. Given the problems of proof just discussed, the Court has reservations about the merits of Plaintiff's claim for liquidated damages against Lack. The Court is also concerned about the "fit" between the allegations in the Complaint, which center on software distribution, and the evidence presented on both liability and damages, which center on the auto-advertising scheme. Thus the second and third Eitel factors weigh against entry of default judgment. Additionally, the Court finds

---

[4] The Court notes that the Complaint's allegations focus on Lack's distribution of infringing software and do not mention Lack's involvement in any illicit auto-advertising scheme.

11

that there is a high possibility of dispute concerning material facts, namely, the identity of stickyskunk and the amount of times he violated the TOU by acting as a Posting Agent. Thus, the fifth Eitel factor also weighs against entry of summary judgment, as does the seventh Eitel factor, the strong policy in favor of decisions on the merits.

This leaves the first and sixth Eitel factors: respectively, the possibility of prejudice to Plaintiff and the possibility that Lack's default was due to excusable neglect. Though these factors weigh in favor of default judgment for the reasons raised by Plaintiff, Mot. at 8, 12, on the facts now before the Court they do not outweigh the other five factors. The Court accordingly DENIES WITHOUT PREJUDICE Plaintiff's Motion for Default Judgment against Lack.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES WITHOUT PREJUDICE the Motion for Default Judgment filed by Plaintiff craigslist, Inc., against Defendants Terrence Branley and Brian Lack.

IT IS SO ORDERED.

Dated: March 16, 2012

UNITED STATES DISTRICT JUDGE